**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 21 2014

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-30423 |
| | ) | |
| Stanley B. Doremus, | ) | Chapter 7 |
| | ) | |
|     Debtor. | ) | Adv. Pro. No. 13-3016 |
| | ) | |
| Stanley B. Doremus, | ) | Hon. Mary Ann Whipple |
| | ) | |
|     Plaintiff, | ) | |
|   v. | ) | |
| | ) | |
| U.S. Department of Education, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Plaintiff Stanley B. Doremus' complaint against Defendant United States Department of Education seeking a discharge of student loan debt as an undue hardship. The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witness, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff's student loan debt cannot be discharged as an undue hardship.

**FINDINGS OF FACT**

Plaintiff is fifty-five years old. He graduated from Owens Community College in 1987 with an associate degree in radiography, which qualified him to work as an x-ray technician. After graduating in 1987, he worked for two years. In 1989, however, Plaintiff sustained an injury to his lower back. During his rehabilitation from that injury, Plaintiff was encouraged to go back to school and obtain a degree that would allow him to work in a field that would not involve a strain on his lower back. He returned to school and obtained a bachelor's degree in electrical engineering from the University of Toledo in 2000.

After graduating in 2000, Plaintiff obtained work in the electrical engineering field. However, Plaintiff testified that job lasted only two months. Thereafter, and until 2004, he held various jobs for short terms, including work as an MRI technician. Plaintiff testified that he took off work, "sometimes for a week at a time," due to his lower back injury and suffering from migraine headaches. According to Plaintiff, potential employers stopped responding to his resumes in 2004 because it "became obvious that he was not reliable." He further testified that he has not seen a doctor since 2005 or 2006 and has not worked since 2006 when he held a job for just a couple of months.

Plaintiff's student loans were incurred during his pursuit of his radiography and electrical engineering degrees and were subsequently consolidated in September 2000 in a Direct Consolidation loan from Defendant. [*See* Def. Exs. B & C]. After graduating in 1987, Plaintiff made regular monthly payments on his student loans for two years until he sustained his back injury and was not working. While there is no testimony addressing the issue, the court assumes that repayment of Plaintiff's student loans was deferred when he returned to school and until 2000 when he graduated from the University of Toledo. Only a couple of payments have been made since 2000 in the total amount of $414.39. [*See* Def. Exs. E & F].

In 2005, Plaintiff applied for an economic hardship deferment. According to Plaintiff, he was told that his only option was to file the same document indicating that he was not working "over and over again." Plaintiff testified that he "told them to make a copy every six months and file it themselves" and that he has not been in contact with Defendant since that time in 2005. Other than a couple of payments that were made, there is no testimony or other evidence of Plaintiff's contact with Defendant between 2000 and 2005.

2

13-03016-maw    Doc 22    FILED 03/21/14    ENTERED 03/21/14 14:10:18    Page 2 of 7

Nevertheless, the court assumes that a similar deferment had been obtained by him as Defendant has indicated that Plaintiff was not in default until August 2009. [*See* Def. Ex. B]. As of March 28, 2013, the total amount due and owing Defendant was $110,006.67, including $80,786.02 in principal and $29,220.65 in interest that is accruing at a rate of $17.98 per day. [Def. Ex. B].

Plaintiff filed his Chapter 7 petition on February 11, 2013. His bankruptcy Schedule F shows no unsecured nonpriority debt. Schedule E, however, includes student loan debt in an unspecified amount. On February 11, 2013, he also commenced this adversary proceeding seeking a discharge of his student loan debt as an undue hardship.

## LAW AND ANALYSIS

Plaintiff seeks to discharge his student loan debt based upon the "undue hardship" exception to nondischargeability of such debt in 11 U.S.C. § 523(a)(8). Section 523(a)(8) provides for the dischargeability of a student loan obligation if "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents. . . ." The underlying purpose of this provision was "to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998).

Although the Bankruptcy Code does not define "undue hardship," the Sixth Circuit has adopted the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) for determining the existence of "*undue* hardship." *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the *Brunner* test, the debtor must prove each of the following three elements:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 385 (quoting *Brunner*, 831 F.2d at 396).

Although the Sixth Circuit has authorized courts to grant a partial discharge of student loan debt pursuant to § 105(a), such equitable adjustment is appropriate only where the undue hardship requirement of § 523(a)(8) is met as to the part discharged. *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 622 (6th Cir. 2004). A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003).

The first prong of the *Brunner* test contemplates that a debtor is first entitled to provide for basic needs for food, clothing, shelter, medical care and transportation for himself and his dependents, if any, before repaying student loan debts. In applying this test, the court must therefore evaluate a debtor's household income and expenses, focusing particularly on what expenses are necessary to realistically maintain a basic standard of living and then determining whether there is income left over with which to pay student loan debts.

In this case, Plaintiff has not worked since 2006 and reports on his Schedule I no income from any other source. [Doc. # 1, p. 26/52]. Plaintiff's Schedule J also reports no expenses. [*Id.* at 27/52]. Plaintiff offered no testimony to explain what income is being used to maintain his home that Schedule A shows he owns jointly with Laura G. Doremus. Nevertheless, in light of the fact that he personally has no income currently, the court concludes that the first prong of the *Brunner* test is satisfied. Plaintiff cannot maintain a minimal standard of living for himself without someone's assistance even without any student loan payment being made.

Under the second prong of the *Brunner* test, a debtor's financial adversity is required to be more than a temporary state of affairs. *Hatfield v. William D. Ford Federal Direct Consolidation Program (In re Hatfield)*, 257 B.R. 575, 582 (Bankr. D. Mont. 2000); *see also Hornsby*, 144 F.3d at 437 ("Courts universally require more than temporary financial adversity. . ."). A debtor must show additional circumstances indicating that his distressed state of financial affairs is likely to persist for a significant portion of the repayment period. *Oyler*, 397 F.3d at 386. "Such circumstances must be indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" *Id.* (citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993)). These circumstances may include, among other things, illness or disability. *Id.* at 386. Implicit in the requirement that a debtor's state of affairs is likely to persist for a significant portion of the repayment period is that the debtor's financial state be the result of events that are clearly out of the debtor's control. *Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002). Thus, the debtor must establish that he has taken all steps possible to improve his financial situation. *Id.* The purpose of this requirement is to give effect to the clear congressional intent – exhibited by the use of the word "undue" in § 523(a)(8) – that a student loan obligation requires more than ordinary hardship before it will be discharged. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088-89 (9th Cir. 2001).

Where "additional circumstances" are premised on the debtor's health, the debtor must "precisely identify [his] problems and explain how [his] condition would impair [his] ability to work in the future." *Tirch v. Pennsylvania Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 681 (6th Cir. 2005).

Expert medical testimony is not necessary to meet a debtor's burden of showing that his medical condition impairs his ability to work now and in the future. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett),* 487 F.3d 353, 360 (6th Cir. 2007). Nevertheless, even though expert testimony is not required, where it is not otherwise apparent from the nature of the condition as described by the debtor or from the court's observation of the debtor, some corroborating evidence must be given supporting the debtor's position. *See Swinney v. Academic Fin. Servs. (In re Swinney*), 266 B.R. 800, 805 (Bankr. N.D. Ohio 2001) (cited approvingly in *Barrett* and stating that "such evidence should consist of more than simply bare allegations; that is, whenever a debtor's health, whether mental or physical, is directly put at issue some corroborating evidence must be given supporting the proponent's position").

In this case, Plaintiff has failed to meet his burden under the second prong of the *Brunner* test. Plaintiff is an intelligent man, holding degrees in both radiography and electrical engineering. While he has experienced certain physical ailments, which include migraine headaches and a lower back injury in 1989, Plaintiff offered no medical records to support a finding that he is unable to work in any capacity. And it was not apparent from either Plaintiff's testimony or the court's observation of Plaintiff that his present state of health is likely to persist for a significant portion of any student loan repayment period. There is no testimony regarding any effort by Plaintiff in seeking treatment for his physical ailments. In fact, Plaintiff testified that he has not seen a doctor for the past seven or eight years. There is no evidence that proper medical treatment would not be effective in treating Plaintiff's conditions. Thus, on the record before the court, Plaintiff has not demonstrated a "certainty of hopelessness" with respect to his financial circumstances based upon his health such that the court may conclude that he has met his burden of showing his distressed state of financial affairs is likely to persist for a significant portion of the student loan repayment period.

The court may also consider a debtor's work history in projecting whether his current state of affairs is likely to persist. *Barrett,* 487 F/3d at 360 (citing *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 360 (6th Cir. 1994). Plaintiff's work history since graduating with his electrical engineering degree in 2000 until 2006 consisted of positions lasting only a few months. To the extent that the short term nature of his employment was a result of his unreliability due to his medical issues, as discussed above, the record is silent regarding the availability of effective medical treatment for such issues. And it is clear that Plaintiff has not sought such treatment for seven or eight years. Furthermore, as a general rule, an existing circumstance that impairs a debtor's ability to work must impair his ability to do any kind of work that would improve his financial condition, not just work within his chosen fields. *See Tirch,* 409 F.3d at 681 (citing *United Student Aid Funds, Inc. v. Paolini (In re Paolini),* 124 F.3d 199

5

(Table), 1997 WL 476515, *5 (6th Cir. Aug. 19, 1997)); *see Hafner v. Sallie Mae Servicing Corp.*, 303 B.R. 351, 356 (Bankr. S. D. Ohio 2003). The record is silent as to any efforts by Plaintiff in actively seeking any employment since 2004 when he testified that employers stopped responding to his resumes. The court cannot conclude on the record before it that Plaintiff has met his burden under the second prong of *Brunner*.

Finally, under the third prong of the *Brunner* test, a debtor must demonstrate that he has made a good faith effort to repay the loan. The good faith requirement does not mandate that payments must have been made when the debtor's circumstances made such payment impossible. *See Alston v. U.S. Dept. of Educ. (In re Alston)*, 297 B.R. 410, 414 (Bankr. E.D. Pa. 2003); *Grove v. Educ. Credit Mgmt. Corp. (In re Grove)*, 323 B.R. 216, 226 (Bankr. N.D. Ohio 2005). Rather, a court should look at the totality of the circumstances in determining a debtor's good fath with respect to the student loan. *Afflict v. United States (In re Afflict)*, 273 B.R. 162, 171 (Bankr. W.D. Tenn. 2001). Factors courts typically consider in this analysis include the following:

> (1) whether debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;
> (2) whether debtor has realistically used all available financial resources to repay the debt:
> (3) whether debtor is using [his] best efforts to maximize earning potential;
> (4) the length of time after the loan first becomes due after debtor seeks to discharge the debt;
> (5) the percentage of student loan debt in relation to debtor's total indebtedness; and
> (6) whether debtor obtained any tangible benefit from the student loan obligations.

*Flores v. U.S. Dept. of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr. N.D. Ohio 2002). This court also considers whether the debtor has maintained contact with his student loan lender when unable to make payments on his debt and whether he has utilized administrative remedies that may be available to him during that time. *See Tirch*, 409 F.3d at 682-83 (explaining that, while not determinative, the availability of advantageous administrative payment alternatives is a relevant factor to be considered by the court in addressing good faith repayment efforts).

This is not a case in which a debtor is seeking a discharge of student loan debt when on the verge of reaping the benefit of his education. Plaintiff filed his petition over twelve years after attending college. And although his student loan debt appears to constitute all of his non-priority unsecured debt, the court does not find that to be a significant fact in its good faith determination. Rather, Plaintiff's failure to demonstrate the first and third factors set forth above and that he has maintained contact with his student loan lender convinces the court that he has failed to meet his burden of showing a good faith effort to repay his loans.

Plaintiff did use his available financial resources to make payments on his student loan debt while

he was working in 1987 until his back injury in 1989. Thereafter, he apparently obtained deferments as to his obligation to repay his student loans until 2009. Nevertheless, Plaintiff testified that he has not been in further contact with Defendant since he applied for an economic deferment in 2005. Although there is no evidence that Plaintiff was aware of any administrative remedies other than the economic hardship deferment, had he maintained contact, he may have been able to address his student loan debt effectively through other administrative alternatives.

Also, the court cannot conclude that Plaintiff's failure to repay his student loan obligations are due to factors beyond his reasonable control where such factors are based upon his physical health given the lack of evidence as to whether there exists medical treatment that would be effective in relieving Plaintiff's physical ailments and his testimony that he has not sought such treatment for an extended period of time. And for the same reasons, to the extent that he is not now employable due to his physical condition, Plaintiff has not shown that he has used his best efforts to become employable.

### **CONCLUSION**

Plaintiff having failed to meet all three prongs of the *Brunner* test, the court cannot find that payment of his existing student loan debt, or any part thereof, would be an undue hardship. Judgment will, therefore, be entered on the complaint in favor of Defendant. A separate judgment effecting this Memorandum of Decision will be entered by the court.

###